UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DONNA ALLEN,<br><br>Plaintiff,<br><br>vs.<br><br>M.G. OIL, d/b/a HAPPY JACKS CASINO,<br><br>Defendant. | 4:23-CV-4052<br><br>MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

Pending before the Court is Defendant, M.G. Oil's, d/b/a Happy Jacks Casino, Motion to Dismiss Plaintiff's complaint. (Doc. 3). For the following reasons, Defendant's Motion to Dismiss is denied.

### BACKGROUND

On or about June 16, 2021, Plaintiff began working at the Happy Jacks Casino in Sioux Falls, South Dakota. (Doc. 1, ¶ 6). Plaintiff was later transferred to the Happy Jacks Casino location on Western Avenue in Sioux Falls and was promoted to an assistant manager position. (Doc. 1, ¶ 7). Richard Moe ("Moe") was Plaintiff's manager and direct supervisor at the Western Avenue location. (Doc. 1, ¶ 8). In January 2022, Moe began sexually harassing Plaintiff by sending her suggestive text messages, photographs, and love songs, including repeated invitations to his home to engage in sexual activity. (Doc. 1, ¶ 9). Plaintiff repeatedly told Moe to stop, but the messages from him continued and were relentless. (Doc. 1, ¶ 10). The messages were so frequent and offensive that co-workers and customers complained about the frequency of the text messages that Plaintiff was receiving. (Doc. 1, ¶ 11). Plaintiff was unable to turn her phone off because she needed to be available to answer calls and text messages from other employees and from her son, who is autistic. (Doc. 1, ¶ 12). Moe also frequently made lewd and offensive comments to Plaintiff while she was working. (Doc. 1, ¶ 13).

1

On or about March 16, 2022, Plaintiff called Dave Kulish ("Kulish"), Defendant's general manager, to report the sexual harassment. (Doc. 1, ¶ 14). The following morning, on March 17, 2022, Plaintiff emailed and texted Pam LaCroix ("LaCroix"), Defendant's casino supervisor, and Steve Rickenbach ("Rickenbach"), Defendant's Sioux Falls casino manager, to report the sexual harassment. (Doc. 1, ¶ 15). On the morning of March 17, 2022, Plaintiff met with LaCroix and Rickenbach for approximately one and a half hours to discuss the situation and to show them the hundreds of suggestive text messages that she had received from Moe. (Doc. 1, ¶ 16). LaCroix and Rickenbach stated that they would meet with Moe and planned to terminate his employment, and encouraged Plaintiff to seek a restraining order against him. (Doc. 1, ¶ 17). Later that same day, LaCroix contacted Plaintiff to tell her that she had met with Moe, that he had admitted to sexually harassing Plaintiff, and that his employment would be terminated. (Doc. 1, ¶ 18).

On or about March 17, 2022, at LaCroix's and Rickenbach's urging, Plaintiff filed a Petition and Affidavit for a Protection Order (Stalking, or Physical Injury as a Result of an Assault, or a Crime of Violence) against Moe. (Doc. 1, ¶ 19). Plaintiff's Petition for a Protection Order sought to restrain Moe from contacting her or from coming withing 1,000 feet of her residence or the Happy Jacks Casino location on Western Avenue. (Doc. 1, ¶ 19).

On March 30, 2022, Doug Reilly ("Reilly"), who is Rickenbach's assistant, informed Plaintiff that Moe had only been suspended for two weeks, and that he would be returning to his manager position at the Happy Jacks Casino location on Western Avenue. (Doc. 1, ¶ 20). To avoid contact between Moe and Plaintiff, Reilly told Plaintiff that she—not Moe—was to be transferred to a different location. (Doc. 1, ¶ 20). When Plaintiff expressed concerns that she may still be required to have contact with Moe in her duties as an assistant manager at a different location, Reilly responded, "that's probably why you won't be assistant manager," indicating that Defendant also planned to demote Plaintiff from her current position to allow Moe to keep his position. (Doc. 1, ¶ 21). Upon information and belief, Happy Jacks did not terminate Moe's employment. (Doc. 1, ¶ 22). Upon information and belief, Moe is still employed with Defendant in a managerial role. (Doc. 1, ¶ 23). On or about March 30, 2022, due to the alleged discrimination, sexual harassment, and retaliation that Plaintiff was experiencing, due to Defendant's alleged failure to adequately address it, and due to the fact that Plaintiff was allegedly forced to choose between her job continued contact with Moe, Plaintiff resigned from her position with Defendant. (Doc. 1, ¶ 24).

Shortly after Plaintiff left her position with Defendant, Plaintiff experienced a panic attack due to the stress she experienced from the incidents alleged. (Doc. 1, ¶ 25). Plaintiff continues to suffer extreme and debilitating emotional distress as a result of these alleged incidents. (Doc. 1, ¶ 26).

On or about April 12, 2022, Plaintiff's Petition for Protection Order was granted on a temporary, ex-parte basis for a period of one month, until May 10, 2022. (Docs. 1; 1-3). The Order for Protection, dated April 12, 2022, restrained Moe from contacting Plaintiff or from coming within 1,000 feet of Plaintiff, her residence, or the Happy Jacks location on Western Avenue. (Doc. 1, ¶ 27). Following a hearing on May 10, 2022, at which Moe did not appear, Plaintiff's Petition for a Protection Order was granted for a period of one year. (Docs. 1, ¶ 28; 1-4). The Order for Protection, dated May 10, 2022, restrained Moe from contacting Plaintiff or from coming within 1,000 of Plaintiff or her residence. (Docs. 1, ¶ 28; 1-4).

On or about May 20, 2022, Plaintiff filed a formal Charge of Discrimination with the South Dakota Department of Labor and Regulation, Division of Human Rights, which was subsequently transferred to the Equal Employment Opportunity Commission ("EEOC") for investigation. (Doc. 1, ¶ 29). On or about January 18, 2023, the EEOC issued Plaintiff a Dismissal and Notice of Rights. (Doc. 1, ¶ 30).

On April 13, 2023, Plaintiff filed a Complaint in this Court against M.G. Oil, d/b/a Happy Jacks Casino alleging the following claims: 1) Count I, Sex Discrimination in violation of Title VII of the Civil Rights Act; 2) Count II, Hostile Work Environment and Constructive Discharge in violation of Title VII of the Civil Rights Act; 3) Count III, Retaliation in violation of Title VII of the Civil Rights Act; 4) Count IV, Sex Discrimination in violation of the South Dakota Human Rights Act; 5) Count V, Retaliation in violation of the South Dakota Human Rights Act; 6) Count VI, Intentional Infliction of Emotional Distress. (Doc. 1).

On June 14, 2023, Defendant filed a Motion to Dismiss. (Doc. 3). The Motion has been fully briefed and is ready for disposition.

## STANDARD OF REVIEW

"To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Smithrud v. City of St. Paul,*

746 F.3d 391, 397 (8th Cir. 2014) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A court assessing such a motion must accept all factual allegations in the complaint as true and draw all inferences in favor of the nonmovant. *Blakenship v. USA Truck Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Courts consider "plausibility" by " 'draw[ing] on [their] own judicial experience and common sense.' " *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Courts must " 'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.' " *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)).

At the pleading phase, "a plaintiff need not plead facts establishing a prima facie case for [her] Title VII claim." *Warmington v. Bd. of Regents of the Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021). Since "the prima facie model is an evidentiary, not a pleading, standard . . . there is no need to set forth a detailed evidentiary proffer in a complaint." *Id.* (quoting *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016)). However, the "elements of the prima facie case are [not] irrelevant to a plausibility determination in a discrimination suit." *Id.* (quoting *Blomker*, 831 F.3d at 1056). The elements are "part of the background against which a plausibility determination should be made." *Id.* Therefore, "[w]hile a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests." *Blomker*, 831 F.3d at 1056 (citation omitted); *see also Twombly*, 550 U.S. at 555. "A claim is facially plausible where the plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Warmington*, 998 F.3d at 795 (quoting *Iqbal*, 556 U.S. at 678). "This standard 'asks for more than a sheer possibility that a defendant has acted unlawfully.' " *Id.* (quoting *Iqbal*, 556 at 678).

When the court considers a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6), it examines the complaint and " 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned' without converting the motion into one for summary judgment." *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2001) (citing 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

4

## DISCUSSION

I. **Counts I & IV - Title VII and Soutth Dakota Human Rights Act – Sex Discrimination Claim**

Defendant initially construed Counts I and IV of Plaintiff's complaint as sexual harassment claims. (Doc. 4 at 39). Plaintiff made clear in its brief in opposition to the Motion to Dismiss that these claims "allege sex discrimination—not sexual harassment—based on Defendant's decision to keep Moe in his position and to not only transfer but also demote Donna." (Doc. 8 at 62-63). Plaintiff argues that she has adequately pleaded a sex discrimination claim.

Defendant has moved to dismiss Plaintiff's sex discrimination claim on the basis that she failed to exhaust administrative remedies as to this claim and on the basis that she has failed to state a claim upon which relief may be granted.

### A. Exhaustion of administrative remedies – sex discrimination claim

It is well established that to bring a claim under Title VII, a plaintiff must first exhaust his or her administrative remedies with the EEOC. *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 989 (8th Cir. 2011). The Eighth Circuit has explained that "[t]he reason for requiring the pursuit of administrative remedies first is to provide the EEOC with an initial opportunity to investigate allegations of employment discrimination and to work with the parties toward voluntary compliance and conciliation." *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005).

To determine what federal claims a plaintiff exhausted, the Court looks to the boxes that were checked on the EEOC charge and the narrative description of the allegations in the EEOC charge. *See Blakely v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011); *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 989 (8th Cir. 2011). "[A] plaintiff will be deemed to have exhausted administrative remedies if the allegations of the judicial complaint are like or reasonably related to the administrative charges that were timely brought." *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 672 (8th Cir. 2006) (citation omitted). The Court should "liberally construe an administrative charge for exhaustion of remedies purposes"; however, "there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo*, a claim which simply was not made." *Seller v. Deere & Co.*, 791 F.3d 938, 943 (8th Cir. 2015).

Where the plaintiff's failure to exhaust administrative remedies under Title VII is apparent from the face of the complaint and the EEOC charge,[1] dismissal under Rule 12(b)(6) is appropriate. *See Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012). The Court finds that the EEOC charge is not part of the record on this Motion to Dismiss and will not address Defendant's failure to exhaust argument at this time.

### B. Has Plaintiff stated a sex discrimination claim upon which relief may be granted?

Defendant has moved to dismiss Counts I and IV alleging sex discrimination in violation of Title VII of the Civil Rights Act and the South Dakota Human Rights Act for failure to state a claim upon which relief may be granted.

The South Dakota Supreme Court looks to Title VII case law when reviewing South Dakota Human Rights Act claim. *Landman v. Kaemingk*, Civ. No. 4:18-41752019 WL 4740167, at *9 (D.S.D. Dept. 27, 2019) ("The South Dakota Supreme Court instructs that discrimination claims are to be analyzed under the same framework as claims under Title VII."). Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of ... sex[.]" 42 U.S.C. § 2000e-2(a). Disparate treatment occurs where an employee treats particular individuals less favorably than others because of a protected trait. *Ricci v. DeStefans*, 557 U.S. 557, 577 (2009). Discrimination occurs when sex 'was a motivating factor for any employment practice, even though other factors also motivated the practice." *Lewis v. Heartland Ins. of Am., LLC*, 591 F.3d 1033, 1037 (8th Cir. 2010). To succeed on a sex discrimination claim under Title VII, a plaintiff may rely on direct or indirect evidence. *See McCullough v. Univ. of Ark. For Med. Sciences*, 559 F.3d 855, 860 (8th Cir. 2009). If an employee does not allege direct evidence of sex discrimination, a court analyzes the claim under the burden-shifting framework of *McDonnell Douglas. Id.* at 861.

The Court finds that Plaintiff has not plausibly alleged a sex discrimination claim through direct evidence. Direct evidence establishes a "specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that

---

[1] The Eighth Circuit has held that "an EEOC charge is a public record which can be considered on a motion to dismiss." *Blakely v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011).

an illegitimate criterion actually motivated the employment decision." *Shaffer v. Potter*, 499 F.3d 900, 904 (8th Cir. 2007) (citing *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 965 (8th Cir. 2006)). Such evidence includes "evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude, where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor." *Id.* (quoting *Schierhoff*, 444 F.3d at 966). Direct evidence might also include "proof of an admission that gender was the reason for an action, discriminatory references to the particular employee in a work context, or stated hostility to women being in the workplace at all." *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1017 (8th Cir. 1999).

Without direct evidence of discrimination alleged in the Complaint, the Court will look to whether Plaintiff has alleged facts sufficient to create an inference that she was discriminated against on the basis of her sex. In making this plausibility determination, the Court will look to the following elements of a prima facie case of sex discrimination: (1) whether plaintiff is a member of a protected class; (2) whether she met her employer's legitimate expectations; (3) whether she suffered an adverse employment action; and (4) whether the circumstances give rise to an inference of gender discrimination. *See Gibson v. AM. Greetings Corp.*, 670 F.3d 844, 853-54 (8th Cir. 2012).

Defendant moves to dismiss Plaintiff's sex discrimination claim on the basis that she has not alleged facts suggesting she was subject to an adverse employment action. Defendant argues that under Eighth Circuit law, a transfer or other "[m]inor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action." (Doc. 9 at 88) (quoting *Wilkie v. Dep't of Health & Hum. Servs.*, 638 F.3d 944, 954-55 (8th Cir. 2011)). Defendant argues that like the plaintiff in *Bell v. Baptist Health*, 60 F.4th 1198 (8th Cir. 2023), Plaintiff in the present case has not alleged facts showing that her proposed transfer to a new casino location would produce a material employment disadvantage. Defendant argues that Plaintiff's allegations do not establish that she was demoted, only that she was informed by Rickenbach, a non-supervisor, of a potential demotion.

In addition, Defendant argues that Plaintiff has failed to plead facts that give rise to an inference of discrimination. (Doc. 9 at 90). "One common way a plaintiff may establish an inference of discrimination 'is to prove disparate treatment by showing that [plaintiff] was treated less favorably than similarly situated employees who are not in plaintiff's protected class.' " *Davis v. Wharf Res. (USA), Inc.*, 867 N.W.2d 706, 715 (S.D. 2015) (citing *Wallin v. Minn. Dep't of Corr.*, 153 F.3d 681, 687 (8th Cir. 1998)). Defendant argues that although Plaintiff pleaded that she was treated differently than Moe on the basis of her sex, Defendant argues that Moe and Plaintiff are not similarly situated employees because Moe was a manager whereas Plaintiff was an assistant casino manager. (Doc. 9 at 91). Defendant also argues that Plaintiff has alleged no facts showing that she was treated less favorably than Moe because Moe was suspended for 2 weeks and Defendant encouraged Plaintiff to obtain a restraining order against Moe which she did in fact obtain.

The Eighth Circuit has held that constructive discharge may satisfy the element of adverse employment action. *See Smothers v. Rowley Masonic Assisted Living Cmty., LLC*, 63 F.4th 721, 730 (8th Cir. 2023). However, in addition to alleging facts showing an adverse employment action, a Plaintiff must also allege facts giving rise to an inference that discrimination was a motivating factor in the constructive discharge. *See Grevlos v. Augustana Univ.*, Civ. No. 4:23-4086, 2023 WL 8880321, at *10 (Dec. 22, 2023) ("For a sex discrimination claim to survive [a motion to dismiss], a plaintiff must allege that she suffered an adverse employment action and that the circumstances give rise to an inference of discrimination in that specific adverse action.").

Defendant appears to acknowledge that a constructive discharge claim based of sex may serve as the basis for a sex discrimination claim, but argues that Plaintiff has failed to state a claim for constructive discharge on the basis of sex. (Doc. 9 at 90). The Court disagrees. As discussed below, the Court finds that Plaintiff has alleged a claim that she was constructively discharged on the basis of her sex. Accordingly, the Court denies Defendant's Motion to Dismiss Plaintiff's sex discrimination claim as alleged in Counts I and IV of the Complaint.

**II.     Count II – Hostile Work Environment Claim and Constructive Discharge**

In Count II of the Complaint, Plaintiff alleges that the sexual harassment she experienced by her supervisor created a hostile work environment, and that Defendant's official acts resulted

in intolerable working conditions such that a reasonable person in Plaintiff's position would have felt compelled to resign. (Doc. 1).

Defendant has moved to dismiss Plaintiff's Title VII hostile work environment constructive discharge claim for failure to state a claim upon which relief may be granted.

"Title VII prohibits an employer from subjecting its employee to a hostile work environment because of such individual's . . . sex." *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005). A prima facie case for a hostile-work-environment claim requires a plaintiff to establish that: (1) she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic under Title VII; (4) the harassment affected a term, condition, or privilege of employment; and (5) employer liability. *Id.* When an employee is the subject of a hostile work environment caused by her supervisor, the employer is vicariously liable for the harassment unless no tangible employment action is taken. *See Rosane v. Shannon Cnty. Sch. Dist. 65-1*, 953 F.Supp.2d 1020, 1044 (D.S.D. 2013) (citing *Faragher v. Boca Raton*, 524 U.S. 775, 807-08 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998)). When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages ("*Ellerth-Faragher* defense"), subject to proof by a preponderance of evidence. *Ellerth*, 524 U.S. at 765. The defense comprises two elements: (1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. *Id.*

The United States Supreme Court has held that constructive discharge brought about by supervisor harassment constitutes a tangible employment action, thus precluding assertion of the *Ellerth-Faragher* defense, if an official act precipitates the constructive discharge. *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 140-41, 147 (2004). The reasons a constructive discharge claim must be precipitated by an official act in order to impose strict employer liability were discussed by the United States Supreme Court in *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004). There, the Court noted that unlike injuries that could be inflicted by a co-worker, "tangible employment actions 'fall within the special province of the supervisor,' who 'has been empowered by the company as . . . [an] agent to make economic decisions affecting other

9

employees under his or her control.'" *Id.* at 144 (quoting *Ellerth*, 524 U.S. at 762). "The tangible employment action . . . is, in essential character, 'an official act of the enterprise, a company act.'" *Id.* (quoting *Ellerth*, 524 U.S. at 762). The Court stated that when a supervisor's harassment of a subordinate does not culminate in a tangible employment action, it is less obvious that the agency relation is the driving force. *Id.* at 145. The Court noted that "there are acts of harassment a supervisor might commit which might be the same acts a coemployee would commit, and there may be some circumstances where the supervisor's status [would] mak[e] little difference." *Id.* (quoting *Ellerth*, 542 U.S. at 145). Accordingly, the Court held that "an employer does not have recourse to the *Ellerth/Faragher* affirmative defense when a supervisor's official act precipitates the constructive discharge" and that "absent such a 'tangible employment action,' [ ] the defense is available to the employer whose supervisors are charged with harassment." *Id.* at 140-41.

Defendant argues that Plaintiff has failed to allege a tangible employment action—that of constructive discharge precipitated by an official act—such that Defendant may be held strictly liable for the alleged the sexual harassment of Plaintiff by her supervisor, Moe. Defendant argues that based on the allegations in the Complaint, the Court should rule as a matter of law that it is not liable for Plaintiff's hostile work environment constructive discharge claim under the *Ellerth-Faragher* affirmative defense.

To establish hostile work environment, plaintiff must show harassing behavior sufficiently severe or pervasive to alter the conditions of their employment. *Suders*, 542 U.S. at 133. To establish "constructive discharge" based on a hostile-environment, a plaintiff must make a further showing: she must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response. *Id.* at 134. "[U]nless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." *Id.* at 147 (citing *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir. 1997)).

The constructive discharge inquiry is an objective one, *Sunders*, 542 U.S. at 141, and must be assessed "from the viewpoint of a reasonable employee," *Green v. Brennan*, 578 U.S. 555, 555 (2016) (stating that constructive-discharge is when "working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign."). Thus, an "employee is not required to show that the employer subjectively intended for the employee to quit, the existence of intolerable conditions alone remains insufficient to form the basis of a

10

constructive discharge claim, for the intolerable conditions must be attributable to the employer." *Sellars v. CRST Expedited, Inc.*, 13 F.4th 681, 700 (8th Cir. 2021).

"To act reasonably, however, 'an employee has an obligation not to assume the worst and not to jump to conclusions too quickly.' " *Atem v. Accurate Homecare, LLC*, Civ. No. 13-903, 2013 WL 5406687, at *6 (D. Minn. Sept. 25, 2013). An employee who quits without giving her employer a reasonable chance to work out a problem is not constructively discharged. *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 497 (8th Cir. 1995). "[C]onstructive discharge claims fail as a matter of law where the employee has not given the employer a reasonable opportunity to correct the intolerable conditions before the employee quits." *Baker v. City of Woodbury*, Civ. No. 20-1787, 2023 WL 8809996, at *9 (D. Minn. Dec. 20, 2023) (quoting *Lisdahl v. Mayo Found.*, 633 F.3d 712, 719 (8th Cir. 2011)).

Defendant argues in its Motion to Dismiss that based upon the allegations in the Complaint, the Court should conclude as a matter of law that a reasonable person in Plaintiff's shoes would not have felt compelled to quit because of intolerable working conditions. (Doc. 4 at 41-42; 9 at 93-96). Defendant argues that no reasonable inference can be made that Plaintiff gave Defendant an opportunity to address her concerns with Moe's return as manager to the Western Avenue location, and with her transfer to a new casino location and potential demotion. (Doc. 9 at 95-96). Defendant argues that Plaintiff never clarified what her new role would entail, or if there was to be any change in pay or benefits, and argues that a reasonable person would have asked questions about the new location, new position, and what precautions would be put into place to avoid future interaction with Moe. (Docs. 4 at 41-42; 9 at 95).

Plaintiff argues in opposition that she has adequately pleaded a tangible or adverse employment action by Defendant—that of constructive discharge brought about by supervisor harassment and precipitated by an "official company act." (Doc. 8 at 67). Specifically, Plaintiff argues that she has pleaded facts showing her constructive discharge was brought about by her supervisor's (Moe) harassment and Defendant's official act of: 1) failing to take proper remedial action "reasonably calculated to end the harassment;" 2) otherwise creating "intolerable working conditions with the intent of forcing her to resign her position" by keeping Moe in his managerial position at the Happy Jacks Casino location on Western Avenue, therefore requiring Plaintiff to

11

have continued contact with him, 3) transferring Plaintiff to a different location, and 4) demoting Plaintiff. (Doc. 8 at 67-68).

The Court finds that a reasonable inference can be made based on the facts pleaded that Plaintiff's working conditions were intolerable and that Plaintiff quit in reasonable response to an employer-sanctioned adverse action officially changing her employment status or situation. *See Suders*, 542 U.S. at 134 (holding that the *Ellerth-Faragher* defense is not available to "the employee who quits in reasonable response to an employer-sanctioned adverse action officially changing her employment status or situation."). Plaintiff alleges that Moe's harassment began in January 2022, and consisted of suggestive text messages, photographs, love songs, repeated invitations to Moe's home to engage in sexual activity, as well as lewd and offensive in-person comments made to Plaintiff while at work. (Doc. 1, ¶¶ 9, 13). Plaintiff alleges that on March 17, 2022, she met with Pam LaCroix, Defendant's casino supervisor, and Steve Rickenbach, Defendant's Sioux Falls casino manager, to discuss the harassment by Moe and showed them the hundreds of text messages she had received from Moe. (Doc. 1, ¶ 16). It is alleged that when confronted by management, Moe admitted to the harassment. A reasonable inference can be made that the harassment was severe and pervasive and made the working environment intolerable. Plaintiff alleges that even customers and co-workers had complained to Plaintiff about the frequency of the text messages she received by Moe. Additionally, after Plaintiff described to management Moe's harassing behavior and showed them the hundreds of harassing text messages she had received from him, Defendant recommended that Plaintiff seek a restraining order against Moe and was in fact granted one by a court of law.

On March 30, 2022, approximately two weeks after she had been informed that Moe had been terminated, Plaintiff alleges that she was informed by Rickenbach's assistant, Doug Reilly, that Moe had only been suspended for two weeks and would be returning (presumably within a day or two) to his manager position at Happy Jacks Casino on Western Avenue. Reilly relayed that to avoid contact between Moe and Plaintiff, Plaintiff would be transferred to a location where, it turns out, she did would not be protected by the restraining order she had sought against Moe at her employer's suggestion.[2] (Doc. 1, ¶ 4). It is alleged that when Plaintiff expressed concerns that

---

[2] Not having been earlier informed by Defendant of her transfer, Plaintiff sought a protection order from Moe at her residence and at the Western Avenue Happy Jacks casino location at which she had been working.

she may be required to have contact with Moe in her duties as an assistant manager at the different location, Reilly responded, "That's probably why you won't be assistant manager." A reasonable factfinder could conclude, based on Plaintiff's allegations, that she gave her employer a "reasonable chance to work out the problem" and that her decision to resign resulted, at least in part, from an official action by Defendant in transferring Plaintiff to a different casino location, unprotected by the protection order, where she would either be required as Assistant Manager to continue working with Moe or would be demoted to a position at that new location that would not require her to work with him. Accordingly, Plaintiff has adequately pleaded that Defendant is strictly liable to her for the alleged hostile-work environment constructive discharge claim. Because Plaintiff has adequately pleaded a claim that Defendant is strictly liable for Plaintiff's alleged constructive discharge brought about by supervisor harassment, the Court need not analyze Defendant's *Ellerth-Faragher* affirmative defense argument.

### III.  Retaliation Claim

In Counts III and V, Plaintiff alleges a retaliation claim arising under Title VII and under the South Dakota Human Rights Act. Defendant has moved to dismiss both Counts.

Title VII prohibits retaliation against employees who allege, or participate in an investigation or proceeding alleging, a violation of Title VII by his or her employer. *Weger v. City of Ladue*, 500 F.3d 710, 726 (8th Cir. 2007). To make out a prima facie case of retaliation, a plaintiff must show: (1) she filed a charge of harassment or engaged in other protected activity; (2) her employer subsequently took adverse employment action against her; and (3) the adverse action was causally linked to her protected activity. *Cram v. Lamson & Sessions Co.*, 49 F.3d 466, 474 (8th Cir. 1995).

Defendant argues that Plaintiff has failed to allege facts creating a reasonable inference that she was subjected to an adverse employment action. Defendant argues that a transfer without a change in pay, benefits, seniority or responsibility is insufficient to sustain a retaliation claim. (Doc. 4 at 45). Defendant argues that any concerns expressed by Plaintiff in her Complaint that she may be demoted were speculation and not based upon any actual decisions made by Defendant. (Doc. 4 at 46). Specifically, Defendant argues that Plaintiff alleges that Rickenbaugh had informed her not that she would be demoted, but rather informed her of the possibility of demotion.

13

Additionally, Defendant argues that under the facts pleaded, Rickenbaugh was not Plaintiff's supervisor and did not have authority on behalf of Defendant to demote her.

Plaintiff argues in opposition that a reasonable inference can be made from the facts alleged that she was being demoted and that she has plausibly alleged that she was subject to the adverse employment action of constructive discharge. (Doc. 8 at 74).

The Court finds that discovery will elucidate the details surrounding Plaintiff's transfer and new position. Additionally, the Eighth Circuit Court of Appeals has explained, "[c]onstructive discharge, like any other discharge, is an adverse employment action that will support an action for unlawful retaliation." *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 497 (8th Cir. 1995). As the Court has already held, Plaintiff has stated a claim for constructive discharge. For these reasons, the Court declined to dismiss Plaintiff's retaliation claim.

### IV. Intentional Infliction of Emotional Distress

Plaintiff alleges in Count VI of her complaint a claim for intentional infliction of emotional distress ("IIED"). Specifically, Plaintiff alleges that:

> Defendant engaged in extreme and outrageous conduct by, among other things, discriminating against Donna on the basis of her sex; by failing to take adequate remedial action to investigate, address, and end the discriminatory and offensive conduct that she experienced in the workplace; by retaliating against her for reporting to Defendant the ongoing sexual harassment that she was experiencing; and, ultimately, by transferring her to a different location, threatening to demote her, and taking the other adverse or unequal employment actions against her leading up to and causing her to resign from her position.

(Doc. 1, ¶ 94).

Defendant has moved to dismiss Plaintiff's IIED claim. Defendant argues that no reasonable inference can be made based on the allegations in the complaint that its conduct was extreme and outrageous enough to state a claim of intentional infliction of emotional distress. (Doc. 4 at 47-48).

Courts considering a state-law claim based on supplemental jurisdiction apply federal procedural law and state substantive law. *See Witzman v. Gross*, 148 F.3d 988, 990 (8th Cir. 1998) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). To state a claim for intentional infliction of emotional distress under South Dakota law, a plaintiff must allege facts

14

showing: (1) an act by the defendant amounting to extreme and outrageous conduct; (2) acted intentionally or recklessly to cause the plaintiff severe emotional distress; (3) which conduct in fact caused the plaintiff severe distress; and (4) the plaintiff suffered an extreme disabling emotional response to defendant's conduct. *Nichols v. MMIC, Inc.*, 68 F.Supp.3d 1067, 1084 (D.S.D. 2014) (citing *Harris v. Jefferson Partners, L.P.*, 653 N.W.2d 496, 500 (S.D. 2002)). In South Dakota, following the Restatement (Second) of Torts, "the conduct necessary to form intentional infliction of emotional distress must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community.'" *Reynolds v. Ethicon Endo-Surgery, Inc.*, 454 F.3d 868, 873 (8th Cir. 2006) (citing *Harris v. Jefferson Partners, L.P.*, 653 N.W.2d 496, 500 (S.D. 2002)). The IIEP tort "imposes liability on the defendant for intentional *and* reckless conduct resulting in emotional distress." *Id.* (quoting *Petersen v. Sioux Valley Hosp. Ass'n*, 491 N.W.2d 467, 468 (S.D. 1992)). To establish reckless conduct, a plaintiff must show that a defendant "recklessly acted in a manner which would create an unreasonable risk of harm to [her], and that [defendant] knew or had reason to know of facts which would lead a reasonable man to realize that such actions would create the harm that occurred." *Moysis v. DTG Datanet*, 278 F.3d 819, 827 (2002).

The South Dakota Supreme Court relies upon the Restatement (Second) of Torts, 46 cmt. h (1965) which provides:

> It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

*Locke v. U.S.*, 215 F.Supp.2d 1033, 1040-41 (D.S.D. Jul. 29, 2002) (quoting *Richardson v. East River Elec. Power Co-op., Inc.*, 531 N.W.2d 23, 27 (S.D. 1995)).

Here, Plaintiff has alleged that she suffered severe and pervasive sexual harassment by her alleged supervisor, Moe. When she reported Moe's conduct to management and showed them the hundreds of harassing text messages Moe had sent her, she was instructed by Defendant to seek a restraining order against Moe which she in fact obtained from a court of law. Plaintiff was informed that Defendant had met with Moe, that he had admitted to the harassment, and that Moe would be terminated. Then, approximately two weeks after she had been informed of Moe's

termination, Defendant relayed that Moe was in fact only on a two-week suspension and would be returning (presumably in a day or two) to his manager position at her assigned location on Western Avenue. It is alleged that Plaintiff was told she would be transferred to a different casino location where, as it turns out, she would not be protected by the protection order she had sought. When she expressed concerns that she would still have continued contact with Moe in her role as assistant manager at the new location, it is alleged that she was informed "that's probably why you won't be assistant manager."

The Court's inquiry on a motion to dismiss is whether Plaintiff has sufficiently pleaded a claim upon which relief can be granted, giving Defendant fair notice of the grounds upon which its rests. *See Nichols v. MMIC Ins. Inc.*, 68 F.Supp.3d 1067, 1084 (D.S.D. Dec. 17, 2014). Accepting Plaintiff's factual allegations as true and construing all reasonable inferences in plaintiffs' favor the Court concludes that Plaintiff has. *Id.* Whether the conduct complained of ultimately fails as a matter of law is a determination more appropriately addressed during summary judgment. *Id.* The Court holds that Plaintiff's intentional infliction of emotion distress claim is sufficiently pleaded to withstand Defendant's Motion to Dismiss.

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (Doc. 3) is DENIED.

Dated this 20th day of February, 2024.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK